Larry Martin KRICHMAR, Petitioner

v.

**STATE BOARD OF VEHICLE MAN-UFACTURERS, DEALERS AND SALES PERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 2004.

Decided May 28, 2004.

Robert E. Kelly, Jr., Harrisburg, for petitioner.

Thomas A. Blackburn, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Larry Martin Krichmar (Salesman) pled guilty to insurance fraud. He now petitions for review of the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) that fined him $1,000 and suspended his vehicle salesperson's license for an indefinite period, but not less than six months, and set conditions for reinstatement. We affirm.

Salesman pled guilty to insurance fraud, a felony of the third degree. He received a probationary sentence pursuant to a plea agreement. Thereafter, based upon this conviction, disciplinary proceedings were initiated against Salesman under Section 19(4) of the Board of Vehicles Act (Act).[1] A hearing was held.

---

1. Act of December 2, 1983, P.L. 306, *as* amended, 63 P.S. §§ 818.1–818.37. Section

At the Board hearing, Salesman admitted entering into a guilty plea agreement for one count of insurance fraud.[2] In response to a Board member's question as to his reasons for entering into the plea agreement, Salesman testified:

Well, I guess the biggest reason was with talking to my attorney and the District Attorney, Central Pennsylvania, I guess, has a little bit higher of a conviction rate, or whatever the proper term would be, in cases. And, you know, with the offer that I was given, I felt that, you know, it would put it behind me. And also with the extreme expense that you can run into with, all due respect to lawyers, and, you know, court costs.

Reproduced Record (R.R.) at 56a–57a. Nowhere in Salesman's testimony did he acknowledge guilt.

In response to his attorney's question of what he did that he should not have done, Salesman stated:

When this initially occurred, I probably knew or did know that I knew the individual who, you know, robbed my home. So I reported it.

. . .

Well, when I—instead of—when I called and reported it to the police, rather than telling them that I had a very strong suspicion of who did it, I decided that I would do my own investigation, if you will, and talk to Jack [Dimm], and see if, in fact, he really, you know, did do it. And I, you know, until I could get in touch with him or I, you know, filed the insurance claim right away.

R.R. at 58a. Although he filed an insurance claim the day of the burglary, Salesman never collected any insurance company money because

approximately two days later, I believe it was, after talking to Mr. Dimm, who actually called me and told me that the police knew he robbed my home, and that all the things that were taken were given back to the police, I called the insurance company and told them that, you know, there was no longer a claim, you know, to cancel the claim that I had filed.

*Id.* Salesman made no other statements about the actions which formed the basis for his conviction.

Ultimately, the Board fined Salesman $1000 and suspended his license for a minimum of six months. However, the Board declined to permit administrative reinstatement of Salesman's license after six months. Rather, the Board required an "opportunity to determine whether [Salesman] is sufficiently remorseful and has become sufficiently rehabilitated to justify reinstatement of his license." Board Adju-

19 of the Board of Vehicles Act (Act), titled **Grounds for disciplinary proceedings,** lists 38 acts that provide disciplinary grounds for a person required to be licensed under the Act. Subsection 4 empowers the Board to formally reprimand, suspend or revoke any license of any person required to be licensed under the Act if that person is found guilty of committing or attempting to commit the act of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime of moral turpitude. 63 P.S. § 818.19(4).

**2.** The Board received various exhibits relating to the underlying criminal charges, including Commonwealth's exhibit one (C–1). That exhibit revealed Salesman solicited Dimm to burglarize his home, reported the non-existent burglary to police and his insurance company, paid Dimm money to arrange the appearance of a burglary at Salesman's residence, and promised Dimm additional money after Salesman received the proceeds from his insurance claim. Certified Record (C.R.) item 12, exhibit C–1.

dication and Order at 7. The Board cited contradictions between Salesman's guilty plea colloquy and his testimony before the Board, and the Board found Salesman's testimony before it not credible. The Board concluded Salesman "has not yet acknowledged his wrongdoing." *Id.* Accordingly, reinstatement was conditioned upon petition by Salesman coupled with proof of payment of monetary penalty, verification of non-practice during suspension, and proof at a Board hearing of fitness to practice.

■ Salesman's timely appeal to this Court[3] essentially concerns length of suspension and conditions of reinstatement. In particular, Salesman characterizes his suspension as of indefinite term. He argues the Board committed error because his indefinite suspension was premised on the inaccurate conclusion that he failed to acknowledge wrongdoing. Next, he assigns error in the conditions for reinstatement, which he contends are vague and beyond the Board's authority. Finally, Salesman complains that his penalty was more onerous than that given others similarly situated.

### 1.

■ Salesman's arguments about his "indefinite suspension" lack merit, because the Board is specifically empowered by statute to suspend or revoke the license of someone convicted of a crime of moral turpitude. Section 19(4) of the Act, 63 P.S. § 818.19(4). The Board has the statutory power to revoke a license. Section 21 of the Act, 63 P.S. § 818.21(b). After revocation, the Board shall not reinstate the license unless ordered to do so by a court.

*Id.* Also, the Board enjoys the specific authority to suspend a license. 63 P.S. § 818.21(a). No time limits are imposed on the authority to suspend. *Id.* Statutory authority to permanently revoke a license includes the lesser power to suspend for an indefinite period of at least six months. *See Civil Service Comm'n of Phila. v. Eckles,* 376 Pa. 421, 103 A.2d 761 (1954) (power to dismiss includes power to demote); *Kaufman v. Pittsburg & C.S.R. Co.,* 217 Pa. 599, 66 A. 1108 (1907) (power to purchase includes power to lease). Salesman offers no law to the contrary.

■ There is no statutory limit on conditions for reinstatement of a professional license after suspension, although courts require that penalties be reasonable. *See Maggiano v. State Bd. of Vehicle Mfrs., Dealers and Salespersons,* 659 A.2d 1071 (Pa.Cmwlth.1995) (Court may not substitute its judgment for that of Board so long as penalty imposed was reasonable in light of violation). Here, the Board correctly characterized conviction of a felony involving fraud as serious. Given the questions the conviction raises about Salesman's honesty and truthfulness and Salesman's failure to appear credible to the Board at its hearing, conditioning license reinstatement on proof of fitness to practice, including credible proof of remorse and rehabilitation, is reasonable. *See Storch v. State Board of Vehicle Mfrs., Dealers and Salespersons,* 751 A.2d 263 (Pa.Cmwlth.2000) (within Board's discretion to require credible proof of remorse and rehabilitation). Moreover, given the purpose of the Act, the condition for reinstatement is consistent with legislative purpose. *See* Preamble to Act of April 19, 1996, P.L. 104

---

**3.** This Court's review of a Board order is limited to a determination of whether the constitutional rights of the licensee were violated, whether the order is in accordance with existing law, or whether any necessary findings of fact are not supported by substantial evidence. *Storch v. State Bd. of Vehicle Mfrs., Dealers and Salespersons,* 751 A.2d 263 (Pa. Cmwlth.2000); Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

(public policy underlying the Act includes protecting the public interest in the purchase and trade of vehicles so as to insure protection against irresponsible vendors and dishonest or fraudulent sales practices).

Salesman challenges the reinstatement condition as being based on a false premise. Specifically, he contends he admitted his guilt, and the Board's conclusion that he has not yet acknowledged wrongdoing is erroneous, thereby justifying reversal.

We do not agree that the Board erred in its evaluation of Salesman's testimony. While not proclaiming innocence, Salesman failed to show the Board that he understood what he did was wrong. Rather, Salesman explained why his guilty plea was a good deal. So, when asked why he pled guilty, Salesman told of wishing to avoid a lengthy prison sentence in a county with a high conviction rate, to avoid expenses associated with trial, and to put the matter behind him.

It is reasonable for the Board to seek a straightforward acknowledgement of wrongdoing from a licensee convicted of fraud. Such an acknowledgement is an initial step in preventing recurrence of wrongful conduct. Also, a straightforward acknowledgement is essential to restore credibility. Such an acknowledgement to the Board is lacking here.

### 2.

■ Next, Salesman contends the conditions for reinstatement are beyond the Board's authority and impermissibly vague. Thus, he argues that the Board lacks specific legislative authority to condition reinstatement on demonstrations of "remorse" and "rehabilitation." He also argues such demonstrations relate to crim-

inal law rather than administrative law. Finally, Salesman claims he does not know what to do in order to obtain reinstatement because the Board's terms are too vague.

The conditions for license reinstatement are not beyond the Board's authority. As previously noted, the Board may permanently revoke a license. Section 21 of the Act, 63 P.S. § 818.21(b). A reasonable penalty less than permanent revocation is implicitly authorized by the Act. As also noted previously, the license reinstatement conditions are reasonable, within the type of proof which the Board may require in its discretion, and consistent with the purpose of the Act.

■ As to Salesman's vagueness claim, a statute or regulation is unconstitutionally vague if it a) traps the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what it prohibits so that he may act accordingly or b) results in arbitrary or discriminatory enforcement in the absence of explicit guidelines for its application.[4] *Toms v. Bureau of Prof'l and Occupational Affairs*, 800 A.2d 342 (Pa.Cmwlth.2002). Furthermore, the language may be interpreted in the context of the common knowledge and understanding of members of a particular profession in deciding if a statute or regulation is specific. *Stephens v. State Bd. of Nursing*, 657 A.2d 71 (Pa. Cmwlth.1995).

Section 22(b) of the Act, 63 P.S. § 818.22(b), addresses applications for a salesperson's license. Included is the requirement that an applicant submit a recommendation that he or she is "honest, trustworthy and of good repute...." 63 P.S. § 818.22(b)(5). The Board's order

---

4. Salesman did not argue the Board's order results in arbitrary or discriminatory enforcement.

provides Salesman another opportunity to demonstrate an honest and trustworthy character, despite his failure to do so at the last Board hearing. In its Adjudication, the Board explained that it sought demonstrations of remorse and rehabilitation, particularly manifested by acknowledgement of wrongdoing. The statutory requirements read together with the Board's adjudication place a person of reasonable intelligence on notice of proof anticipated at the next hearing. Salesman's arguments to the contrary are unpersuasive at best.

### 3.

■ Finally, Salesman argues the Board's sanction against him is disproportionately more severe than other sanctions ordered for others convicted of a crime of moral turpitude. This issue was not raised before the Board. Because Salesman did not raise the issue, it is waived. *Singer v. Pennsylvania State Bd. of Psychology,* 159 Pa.Cmwlth. 385, 633 A.2d 246 (1993) (a respondent before a state licensing board who did not raise before the board a violation of procedural due process has waived that issue on appeal).

Accordingly, we affirm the decision of the Board.

### ORDER

AND NOW, this 28th day of May, 2004, the order of The State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.